No. 14-1322

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

CONSOLIDATION COAL COMPANY

*Petitioner,*

v.

FULLER W. VARNER

*Respondent,*

and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Party-In-Interest.*

CONSOLIDATION COAL COMPANY'S
BRIEF IN SUPPORT OF PETITION FOR REVIEW
PUBLIC REDACTED VERSION

William S. Mattingly
Jackson Kelly PLLC
P. O. Box 619
Morgantown, WV  26507
(304) 284-4100
*Counsel for Consolidation Coal Company*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS
### AND OTHER INTERESTS

No. <u>14-1322</u>      Caption:      <u>Consolidation Coal Company v. Fuller W. Varner</u>

Pursuant to FRAP 26.1 and Local Rule 26.1, <u>Consolidation Coal Company</u>, <u>Petitioner</u>, makes the following disclosure:

1.   Is party/amicus a publicly held corporation or other publicly held entity?
     _____ YES   __X__ NO

2.   Does party/amicus have any parent corporations?
     __X__ YES   _____ NO

     Consolidation Coal Company was sold in a stock purchase by CONSOL Energy, Inc. to Murray American Energy, Inc. and Murray American Energy, Inc., or its subsidiaries, are financially responsible for this claim.

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
     _____ YES   __X__ NO

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
     _____ YES   __X__ NO

5.   Is party a trade association? (amici curiae do not complete this question)
     _____ YES   __X__ NO

6.   Does this case arise out of a bankruptcy proceeding?
     _____ YES   __X__ NO

<u>/s/ William S. Mattingly</u>                    <u>June 16, 2014</u>
*Counsel for Consolidation Coal Company*

i

# TABLE OF CONTENTS

I.    STATEMENT OF APPELLATE AND SUBJECT MATTER
      JURISDICTION ...........................................................................................1

II.   STATEMENT OF THE ISSUES ...............................................................3

      1.   Although Mr. Varner testified that he was told by a physician in
           2001 he was disabled by COPD caused by coal mine dust
           exposure, ALJ Morgan ruled that the 2010 application for
           benefits was nonetheless timely.  Is the ALJ's determination
           that this application is not barred by the three year time
           limitations of the BLBA reasonable, based on substantial
           evidence, and supported by substantial evidence? .............................3

      2.   ALJ Morgan finds that the operator has not rebutted the
           presumption of total disability due to pneumoconiosis.  Has the
           ALJ accurately applied the guiding principles and rationally
           weighed the evidence in concluding the evidence is insufficient
           to rebut the presumption of total disability due to
           pneumoconiosis?...................................................................................3

III.  STATEMENT OF THE CASE .....................................................................4

IV.   SUMMARY OF THE ARGUMENT ...........................................................9

V.    ARGUMENT ...........................................................................................11

      A.   Standard of Review ...............................................................11

VI.   ARGUMENT ...........................................................................................12

      1.   The 2010 application is time barred as in 2000 or 2001
           Dr. Manchin told Mr. Varner he was disabled by COPD caused
           by coal dust exposure.......................................................................12

      2.   Substantial evidence fails to support the ALJ's resolution of the
           medical evidence...............................................................................23

           a.   The ALJ erred in not considering if pneumoconiosis was
                mild and not a substantial contributor to disability.................23

           b.   Substantial evidence does not support the ALJ's
                resolution of the conflicting evidence. .....................................24

VII.   CONCLUSION ............................................................................................31

VIII.  REQUEST FOR ORAL ARGUMENT.......................................................32

IX.    CERTIFICATE OF COMPLIANCE ..........................................................33

X.     CERTIFICATE OF SERVICE....................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Bogan v. Consolidation Coal Co.*,
    6 BLR 1-1000 (1984) ................................................................... 25

*Consol. Edison Co. of N.Y. v. NLRB*,
    305 U.S. 197 (1938) ..................................................................... 11

*Consolidation Coal Co. v. Williams*,
    453 F.3d 609 (4th Cir. 2006) ................................................. 13, 17

*Dehue Coal Co. v. Ballard*,
    65 F.3d 1189 (4th Cir. 1995) ...................................................... 11

*Furgerson v. Jericol Mining, Inc.*,
    22 BLR 1-216 (2002) ................................................................ 8, 19

*Gunderson v. Director, OWCP*,
    601 F.3d 1013 (10th Cir. 2010) .................................................. 29

*Island Creek Coal Co. v. Compton*,
    211 F.3d 203 (4th Cir. 2000) ...................................................... 11

*Island Creek Coal Co. v. Henline*,
    456 F.3d 421 (4th Cir. 2006) ................................................. 14, 20

*Lane Hollow Coal Co. v. Director, OWCP*,
    137 F.3d 799 (4th Cir. 1998) ...................................................... 27

*Lisa Lee Mines v. Director, OWCP*,
    86 F.3d 1358 (4th Cir. 1996) ...................................................... 24

*Marcum v. Director, OWCP*,
    22 BLR 1-23 (1987) .................................................................... 25

*Milburn Colliery Co. v. Hicks*,
    138 F.3d 524 (4th Cir. 1998) ................................................. 11, 18

iii

*Mingo Logan Coal Co. v. Owens*,
 724 F.3d 550 (4th Cir. 2013)...................................................................... 23

*Sewell Coal Co. v. Director, OWCP [Dempsey]*,
 523 F.3d 257 (4th Cir. 2008)..........................................................13, 20, 21

*Shupe v. Director, OWCP*,
 12 BLR 1-200 (1989)................................................................................. 13

*Sterling Smokeless Coal Co. v Akers*,
 131 F.3d 438 (4th Cir. 1997)................................................................11, 18

*U.S. v. Kubrick*,
 444 U.S. 111 (1979)..............................................................................21, 22

*Usery v. Turner Elkhorn Mining Co.*,
 428 U.S. 1 (1976)..................................................................................23, 30

## Statutes

Black Lung Benefits Act
 30 U.S.C. § 901 ......................................................................................4, 9
 30 U.S.C. § 902 ........................................................................................ 26
 30 U.S.C. § 921 ....................................................................................23, 30
 30 U.S.C. § 932 .............................................................................1, 7, 12, 19

Longshore and Harbor Workers' Compensation Act,
 33 U.S.C. § 921(c) ..................................................................................... 1

## Regulations

Part 718 - Standard for Determining Coal Miner's Total Disability or Death Due to Pneumoconiosis

 20 C.F.R. § 718.201 ............................................................................6, 25, 26
 20 C.F.R. § 718.204........................................................................ 6, 7, 18, 19, 30
 20 C.F.R. § 718.305............................................................................... 30
 20 C.F.R. § 718.308..................................................................... 12, 19, 22

Part 725 - Claims for Benefits Under Part C of Title IV of the Federal Coal Mine Safety and Health Act, as Amended

20 C.F.R. § 725.101 ................................................................................. 18
20 C.F.R. § 725.308 ...........................................................................7, 12, 19
20 C.F.R. § 725.309 ................................................................................. 24
20 C.F.R. § 725.482 ................................................................................... 1

## I.    STATEMENT OF APPELLATE AND SUBJECT MATTER JURISDICTION

This matter involves an appeal from the February 5, 2014 final order of the United States Department of Labor Benefits Review Board ("Board") arising out of claim for lifetime disability benefits filed by Fuller W. Varner, a retired coal miner.  Joint Appendix ("JA") 78.  United States Circuit Courts of Appeals have jurisdiction over an appeal from a final Board order as per Section 21(c) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a) of the Black Lung Benefits Act ("BLBA").  On February 5, 2014, the Board affirmed the December 27, 2012 decision awarding black lung benefits to Fuller W. Varner pursuant to the provisions of the BLBA by United States Department of Labor Administrative Law Judge ("ALJ") Richard A. Morgan.  JA 38, 78.  The alleged injury in this case, within the meaning of 33 U.S.C. § 921(c) of the LHWCA, as incorporated by 30 U.S.C. § 932(a) of the BLBA, occurred as a result of coal mine employment in mines located in West Virginia.  JA 18, 39.  This Court has subject matter jurisdiction.

The jurisdictional time limit for filing an appeal from a final Board order is 60 days.  *See* 33 U.S.C. § 921(c); 20 C.F.R. § 725.482(a).  The Board issued its final order affirming the award of benefits to Mr. Varner on February 5,

2014.  JA 78.  Consolidation Coal Company ("CONSOL") filed its appeal from this final order with the Clerk of the Fourth Circuit on Monday, April 7, 2014. JA 88.  This Court has subject matter and appellate jurisdiction to hear the appeal from the final agency order.

## II.    STATEMENT OF THE ISSUES

1.    **Although Mr. Varner testified that he was told by a physician in 2001 he was disabled by COPD caused by coal mine dust exposure, ALJ Morgan ruled that the 2010 application for benefits was nonetheless timely. Is the ALJ's determination that this application is not barred by the three year time limitations of the BLBA reasonable, based on substantial evidence, and supported by substantial evidence?**

2.    **ALJ Morgan finds that the operator has not rebutted the presumption of total disability due to pneumoconiosis. Has the ALJ accurately applied the guiding principles and rationally weighed the evidence in concluding the evidence is insufficient to rebut the presumption of total disability due to pneumoconiosis?**

### III.   STATEMENT OF THE CASE

This matter concerns the lifetime benefits claim filed by Fuller W.

Varner, a retired coal miner, pursuant to the provisions of the Federal Coal Mine

Health and Safety Act of 1969, as amended, 30 U.S.C. § 901, *et seq*., commonly

known as the Black Lung Benefits Act ("BLBA").  Mr. Varner worked as an

underground coal miner, classified as a general inside laborer, for Consolidation

Coal Company ("CONSOL") between 1970 and his retirement in 2000.  JA 1.

He retired because of disability.  *Id.*

His initial application for black lung benefits was filed in 1996 and

ultimately denied by the agency in 1997.  JA 39, *see also* Director's Exhibit

("DE")[1] 1 at page 65.  He filed this subsequent claim in 2010.  JA 1.  The agency

found him entitled to benefits, and aggrieved, CONSOL asked for a *de novo*

hearing.  DE 25.  The subsequent claim was considered by ALJ Richard T. Morgan

in a June 13, 2012 hearing.  At that hearing, an agency record was identified to

include the proceedings at the hearing, 35 Director's Exhibits, 2 Claimant's

Exhibits, and 17 Employer's Exhibits.  JA 39.  On December 27, 2012

ALJ Morgan awarded benefits (JA 38) and on February 5, 2014 the Benefits

---

[1]      Director's Exhibit is abbreviated "DE," Claimant's Exhibit "CE,"
Employer's Exhibit "EE," and Hearing Transcript "HT."

Review Board affirmed that award.  JA 78.  An appeal to this Court followed.
JA 88.



JA 97.

JA 118.

JA 176; EE 1, 10.

JA 250.

EE 2.  ALJ Morgan notes the history of cigarette smoking to
be conflicting, and found Mr. Varner smoked 6 cigarettes a day from 1955 until
1988.  This finding was because the majority of physicians believed this smoking
history.  JA 44-45.

Unlike many black lung benefits claims, Mr. Varner's claim contained only a scant radiographic suggestion of clinical coal workers' pneumoconiosis.[2] A lone positive x-ray interpretation was offered by Mr. Varner, JA 139. It was found insufficient to establish the existence of pneumoconiosis. JA 66, 69.



JA 111.

There is no dispute that Mr. Varner is afflicted with severe and disabling pulmonary disease. JA 99, 130, 252. DE 1 compared with JA 100, 135, 256.

---

[2]    Pneumoconiosis is a chronic dust disease of the lungs defined by the DOL regulations as "clinical" pneumoconiosis and "legal" pneumoconiosis. 20 C.F.R. § 718.201(a)(1) and (2). Clinical pneumoconiosis consists of those diseases characterized by permanent deposition of substantial amounts of particulate matter in the lungs, while legal pneumoconiosis includes any chronic lung disease arising out of coal mine employment.

[3]    CT scans are a more sensitive method to evaluate pulmonary parenchyma and in confirming or refuting the presence of pneumoconiosis. JA 112.

[4]    *See* 20 C.F.R. § 718.204(b)(2)(i) and Table B1 in Appendix B to Part 718.

████████████████████████████████████ *Id.*

████████████████████████████████████

███████████████████████████████ █ █

███████████████    JA 133, 255.  Given this clinical presentation of

pulmonary disability, the agency was tasked with determining whether "legal"

pneumoconiosis was present and the causation of the pulmonary disability.

CONSOL challenges whether the claim was timely filed within three

years after a medical determination of total disability due to pneumoconiosis was

communicated to the miner.  *See* 30 U.S.C. § 932(f); 20 C.F.R. § 725.308.

ALJ Morgan found the miner's testimony failed to trigger the statute of limitations.

Although Dr. Manchin told Mr. Varner he was disabled by COPD caused by coal

dust exposure in 2000 or 2001 and Dr. Jaworski told him for 8 or 9 years prior to

the 2012 hearing that he had severe and disabling lung disease, this was

insufficient as "[B]eing totally disabled is not the same thing as being disabled."

JA 41-43.

Dr. Jaworski diagnosed bronchial asthma/industrial bronchitis, as well

as assessing a moderately severe COPD, noting the impairment was cigarette

smoking with possible contribution by coal dust exposure.  DE 1 page 35.  In his

2011 opinion, Dr. Jaworski stated Mr. Varner's severe chronic obstructive lung

---

[5]    *See* 20 C.F.R. § 718.204(b)(2)(ii) and Appendix C to Part 718.

7

disease was caused by exposure to coal mine dust, cigarette smoking, and asthmatic diathesis. CE 2. ███████████████████████████████ JA 99.

████████████████████████████████████████████████████

███████████████████████████████ JA 130, 252. Based on this record, ALJ Morgan awarded benefits finding CONSOL failed to rebut the presumption of legal pneumoconiosis and disability causation from coal mine work.

The Board affirmed the ALJ's findings and the award of benefits. JA 78. The Board did not address whether the ALJ's distinction of whether being disabled was the same as being "totally disabled," but found the Claimant's *hearing testimony* was insufficient to rebut the presumption of timeliness. The Board viewed Mr. Varner's testimony to be inadequate to trigger the statute of limitations citing their decision in *Furgerson v. Jericol Mining, Inc.*, 22 BLR 1-216, 1-223 (2002) (directing an ALJ must determine whether a medical report constitutes a medical determination of total disability due to pneumoconiosis that has been communicated to the miner). The Board also found no error in the ALJ's weighing of the medical opinions of Drs. Bellotte and Basheda. JA 84-85. Aggrieved, CONSOL now asks the Court to review the agency decisions.

## IV.   SUMMARY OF THE ARGUMENT

Fuller W. Varner, a retired coal miner, seeks a lifetime award of disability benefits under the Black Lung Benefits Act, 30 U.S.C. § 901, *et seq.* There is no issue that he has disabling lung disease. The clinical studies and physician assessments show Mr. Varner to have severe chronic obstructive pulmonary disease ("COPD"). The controversy presented is whether he complied with the statute of limitations and filed this claim within three years of a communication of total disability due to pneumoconiosis and, if timely, whether the ALJ erred in weighing the conflicting evidence.

Although Mr. Varner explained a physician informed him in either 2000 or 2001 that he was disabled by COPD arising from work in the coal mines, the claim was ruled timely filed. The ALJ found this testimony was not sufficient to rule the 2010 claim was filed more than three years after a communication of total disability due to pneumoconiosis. The ALJ ruled "totally disabled" was not the same as being "disabled." On review, the Board avoided considering the ALJ's reasoning distinguishing between "disability" and "total disability." Rather, the Board held the claim was timely filed, not for the reasons the ALJ articulated, but as the miner's testimony regarding a physician's oral statement was insufficient to make the claim untimely filed. Relying on a prior Board decision (finding a written medical report was to be considered under the three year statute of

9

limitations), Mr. Varner's 2010 claim was timely filed as hearing testimony was insufficient to rebut the presumption of timely filing.

The Board also affirmed the ALJ's weighing of the conflicting physician assessments of both "legal" pneumoconiosis and disability causation as well as the ALJ's resolution of the inconsistent histories of cigarette smoking. The reasons articulated by the ALJ are inconsistent with the record and fail to resolve the conflicting evidence in a rational way that is consistent with law.

## V.    ARGUMENT

### A.    Standard of Review

In reviewing claims for benefits under the BLBA, this Court determines whether substantial evidence supports the findings of fact and conclusions of law issued by the ALJ.  *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998).  In determining whether substantial evidence supports the ALJ's factual determination, the Court should address whether all relevant evidence has been analyzed and whether the ALJ has sufficiently explained the rationale used in crediting certain evidence.  *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997).  The ALJ's and Board's conclusions of law are reviewed *de novo* to determine if they are rational and consistent with the applicable law.  *See Ballard*, 65 F.3d at 1193; *see also Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207-08 (4th Cir. 2000).

11

## VI.    ARGUMENT

1.    **The 2010 application is time barred as in 2000 or 2001 Dr. Manchin told Mr. Varner he was disabled by COPD caused by coal dust exposure.**

30 U.S.C. § 932(f) provides a three year statute of limitation on filing of black lung benefits claims.[6]  The limitation section requires any claim for benefits by a miner shall be filed within three years after a medical determination of total disability due to pneumoconiosis or March 1, 1978, whichever occurs later. *Id.*  The implementing regulation, 20 C.F.R. § 725.308, provides a claim for benefits shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner. *See* § 718.308.[7]

_____

[6]    The limitation on filing claims in 30 U.S.C. § 932(f) provides:  Any claim for benefits by a miner under this section shall be filed within three years after whichever of the following occurs later—(1) a medical determination of total disability due to pneumoconiosis; or (2) March 1, 1978.

[7]    The time limits for filing claims at 20 C.F.R.§ 718.308 provides:

> (a)  A claim for benefits filed under this part by, or on behalf of, a miner shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner or a person responsible for the care of the miner, or within three years after the date of enactment of the Black Lung Benefits Reform Act of 1977, whichever is later. There is no time limit on the filing of a claim by the survivor of a miner.

Mr. Varner's employment for CONSOL in West Virginia (DE 7), makes his claim subject to the circuit law of the jurisdiction for the U.S. Court of Appeals for the Fourth Circuit. *See Shupe v. Director, OWCP*, 12 BLR 1-200, 1-202 (1989). This provision of the BLBA is accepted and applied in cases arising in the Fourth Circuit. *See generally Consolidation Coal Co. v. Williams*, 453 F.3d 609 (4th Cir. 2006), *cert. denied*, 549 U.S. 1279 (2007). As of the time of his decision ALJ Morgan notes, the Fourth Circuit has also considered the timeliness limitation in two later cases. JA 4. The ALJ explained:

---

(b)  A miner who is receiving benefits under part B of title IV of the Act and who is notified by HEW of the right to seek medical benefits may file a claim for medical benefits under part C of title IV of the Act and this part. The Secretary of Health, Education, and Welfare is required to notify each miner receiving benefits under part B of this right. Notwithstanding the provisions of paragraph (a) of this section, a miner notified of his or her rights under this paragraph may file a claim under this part on or before December 31, 1980. Any claim filed after that date shall be untimely unless the time for filing has been enlarged for good cause shown.

(c)  There shall be a rebuttable presumption that every claim for benefits is timely filed. However, except as provided in paragraph (b) of this section, the time limits in this section are mandatory and may not be waived or tolled except upon a showing of extraordinary circumstances.

> *In Sewell Coal Co. v. Director, OWCP [Dempsey]*,
> 523 F.3d 257, 259-260 (4th Cir. 2008) (unpublished), the
> Fourth Circuit held that the statute of limitations at
> 20 C.F.R. § 725.308 applied to subsequent claims filed
> under 20 C.F.R. § 725.309 as well. Additionally, the
> Fourth Circuit interpreting the "which has been
> communicated" language held that "neither the BLBA
> nor the implementing regulations require that the notice
> to a miner of a medical determination of his total
> disability due to pneumoconiosis be in writing in order to
> trigger the start of the three-year statute of limitations
> clock on black lung claims." *Island Creek Coal Co. v.
> Henline*, 456 F.3d 421, 425 (4th Cir. 2006).

JA 41.  The question presented is whether a physician communicated to

Mr. Varner that he had assessed disability due to pneumoconiosis.

   When cross-examined, the following exchanged occurred with
Mr. Varner:

> Q:    You told us about Dr. Jaworski.  He diagnosed you
>       with lung disease?
>
> A:    Yeah.
>
> Q:    Has he ever told you that you have a disabling lung
>       disease?
>
> A:    Well, he always says severe.
>
> Q:    Okay.  When did he start telling you your lung
>       disease was severe?
>
> A:    Oh, he's told me that for the last eight or nine year.
>
> Q:    Has he ever told you what caused your severe lung
>       disease?

14

A:     No.

Q:     Has he ever diagnosed you with asthma?

A:     No.

Q:     Has he ever told you you have coal workers' pneumoconiosis lung disease?

A:     No.

Q:     Has he diagnosed you with COPD?

A:     I've been diagnosed with COPD, yeah.

Q:     By Dr. Jaworski?  Or, has he told you?

A:     Dr. Manchin is the one that come up with the COPD.

Q:     And when did Manchin tell you you had COPD?

A:     Oh, about the year 2000, 2001.

Q:     Did he tell you what caused the COPD?

A:     Dust.

Q:     Did Dr. Manchin tell you you were disabled by your COPD?

A:     That's the reason I had to leave the coal mines.

Q:     So you left the coal mines in 2000 when Dr. Manchin told you you were disabled by COPD caused by coal dust exposure?

A:     Yeah.

> Q:    Dr. Manchin practices down closer to your home in Marion County?
>
> A:    Farmington.
>
> Q:    Did Dr. Manchin also tell you you had coal workers' pneumoconiosis, or just COPD due to coal dust?
>
> A:    He said COPD.
>
> Q:    But he told you the COPD was due to coal dust?
>
> A:    Yes, sir.

JA 25-26.

ALJ Morgan is far too demanding requiring precise parroting of the statute's language in considering whether this claim was timely filed. He rules the timeliness determination turning on wording of the question—"So you left the coal mines in 2000 when Dr. Manchin told you you were disabled by COPD caused by coal dust exposure?" JA 43. ALJ Morgan holds that for a claim to be untimely filed, the magic talisman "total disability" not just "disability" must be communicated to the miner as "being totally disabled is not the same thing as being disabled, as a person can be disabled but still able to perform a job." JA 43. As Mr. Varner was told he was disabled by COPD caused by coal dust exposure, but not he was totally disabled by COPD caused by coal dust exposure, the claim was deemed timely filed. *Id.*

16

Such a decision is neither supported by substantial evidence and is an abuse of discretion given the totality of the testimony given by Mr. Varner. When one reads the totality of the testimony rather than just one sentence, Mr. Varner agrees that he has been diagnosed with COPD, that Dr. Manchin told him COPD was caused by dust, that Dr. Manchin told him he was disabled by COPD, and COPD was the reason Mr. Varner had to leave the coal mines. JA 25-26. Dr. Jaworski, the miner's treating physician, has also told Mr. Varner he had a disabling lung disease, although he had never told him the cause of the disabling lung disease. JA 26. Mr. Varner understood in 2000 or 2001, far more than three years before he filed his subsequent claim in 2010, that he had a disabling lung disease, that his treating physician, Dr. Manchin, advised was COPD caused by coal dust exposure. *Id.* This was the reason he left the coal mines in 2000. *Id.* Dr. Manchin's 2000 or 2001 statement was not invalidated as a misdiagnosis by the 1997 agency denial of the initial claim. Compare *Consolidation Coal Co. v. Williams*, 453 F.3d at 618 (medical report inconsistent with the agency determination is a misdiagnosis) and insufficient to trigger the statute of limitations.

Primary focus on whether "disability" or "total disability" was posed in a particular question is misplaced. By emphasizing the exact phrasing of a single question, the ALJ ignores the totality of the testimony and violates the

17

precept that the agency's orders must be rational, supported by substantial

evidence, and in accordance with applicable law. *See Sterling Smokeless Coal Co.*

*v. Akers*; *Milburn Colliery Co. v. Hicks*.  The miner's testimony was that he was

told he was totally disabled by severe lung disease, that the COPD was first

diagnosed by Dr. Manchin in 2000 or 2001, that Dr. Manchin found him to be

disabled by lung disease and that was the reason he left coal mine employment.

JA 42.  The parsing of language to suggest "total disability" is not the same thing

as "being disabled" is neither supported by his testimony nor the regulatory

definition of total disability.  By creating a new distinction between disability and

disability causation, ALJ Morgan fails to apply the regulatory definition of

disability.  20 C.F.R. § 725.101(a)(29) and 20 C.F.R. § 718.204(b).

     Disability is defined by 20 C.F.R. § 718.204(b).  Pneumoconiosis is a

substantially contributing cause of a disabling respiratory impairment when:  1) a

pulmonary impairment prevents a miner from performing his usual coal mine

work; or 2) when a physician, exercising reasoned medical judgment, states that a

pulmonary condition prevents the miner from engaging in his usual coal mine

work.  § 718.204(b)(1)(i) and (ii).  As is clear from Mr. Varner's testimony at the

2012 hearing, in either 2000 or 2001 Dr. Manchin told him he could no longer

work in the mines because of COPD caused by coal dust exposure and this was the

reason Mr. Varner left the mines.  JA 25-26.  In 2003 or 2004, Dr. Jaworski told

18

Mr. Varner he had severe lung disease.  JA 26.  Contrary to the ALJ's finding,

Mr. Varner's testimony is consistent with total disability as the agency defines total

disability.  Under § 718.204(b)(1)(i), a miner is "totally disabled" when pulmonary

disability or impairment prevented him from going back and performing his usual

coal mine work.  This subsequent claim is time barred as per § 932(f) of the BLBA

as implemented by § 718.308.  The award of benefits must be reversed, and an

order denying benefits as time barred entered.

   The three year time limit is mandatory and may not be waived or

tolled except upon a showing of extraordinary circumstances.  § 725.308(c).

The reasoning ALJ Morgan relies on was neither consistent with the applicable law

nor supported by substantial evidence in the record.  The Board analyzed a

different aspect of Mr. Varner's testimony, opting to focus on whether the *hearing*

*testimony* was sufficient to rebut the presumption of timeliness.  JA 81.  The Board

found the "mere testimony that Dr. Manchin told him he was disabled was not

sufficient" as a medical report constitutes a determination of total disability due to

pneumoconiosis communicated to the miner.  *Id.*; *citing Furgerson v. Jericol*

*Mining, Inc.*, 22 BLR 1-216, 1-223 (2002).  The Board errs in failing to note

Dr. Manchin told the miner he was disabled by COPD *caused by coal dust*

*exposure*.  JA 26.  The Board complicates this factual error when it imposes the

19

need for a written medical report to find a claim not timely filed and holding

*hearing testimony* is per se inadequate.  As ALJ Morgan pointed out:

> The Fourth Circuit interpreting the "which has been communicated" language held that "neither the BLBA nor the implementing regulations require that the notice to a miner of a medical determination of his total disability due to pneumoconiosis be in writing in order to trigger the start of the three-year statute of limitations clock on black lung claims." *Island Creek Coal Co. v. Henline*, 456 F.3d 421, 425 (4th Cir. 2006).

JA 41.  In *Henline*, this Court explained the Board's view was wrong and the

Director concedes that "Island Creek rightfully complains that the Board affirmed

the ALJ's timeliness finding on an improper ground."  456 F.3d at 425.  After

acknowledging the Director's position, the Court explains:

> [N]either the statute nor the implementing regulations requires a written communication; the Board's precedent to the contrary is wrong. There is simply no basis for limiting the plain language of the implementing regulation-that a medical determination be "communicated" to the miner-to a written communication.

*Id.*

In *Sewell Coal Co. v. Director, OWCP [Dempsey]*, 523 F.3d 257, 260

(4th Cir. 2008), the Fourth Circuit agreed that the timeliness regulation does apply

in subsequent claims explaining:

> In this case, the ALJ found that the statute of limitations period in Section 725.308(a) does not apply to

20

subsequent claims. However, we have held in an
unpublished opinion that the statute of limitations applies
to both initial and subsequent claims. *Westmoreland
Coal Co. v. Amick*, 123 Fed.Appx. 525, 528 (4th Cir.
2004). As we discussed in *Westmoreland Coal Co. v.
Amick*, neither the statute, 30 U.S.C. § 932(f), nor the
regulation makes any distinction between initial or
subsequent claims. *Id.* Specifically, the statute and the
regulation simply refer to "any" or "a" claim for benefits,
respectively. *Id.* Thus, neither the statute nor the
regulation on their face allow for an interpretation that
makes a distinction between initial and subsequent
claims. As such, we vacate the Decision and Order of the
Board affirming the ALJ's award of benefits in regard to
Dempsey's claim, and we remand to the ALJ for further
proceedings on the issue of timeliness.

*Dempsey*, 523 F.3d at 259. The statute provides the time clock starts upon a

"medical determination." Neither the statute nor the regulation demands a written

medical determination or that medical determination communicated to the miner in

a written report as necessary to start the time clock.

Statutes of limitations are found and approved in all systems of

enlightened jurisprudence. *U.S. v. Kubrick*, 444 U.S. 111, 115, 117 (1979). As the

Supreme Court explained:

It goes without saying that statutes of limitations often
make it impossible to enforce what were otherwise
perfectly valid claims. But that is their very purpose, and
they remain as ubiquitous as statutory rights or other
rights to which they are attached or applicable. We
should give them effect and accordance with what we can
ascertain the legislative intent to have been.

21

*Kubrick*, 444 U.S. at 115. In *Kubrick*, the Court explained that should Congress desire a different result in Federal Tort Claims Act cases brought following treatment in a Veteran's Administration hospital it may exercise its prerogative to amend the statute so as to effect its legislative will. *Kubrick*, 444 U.S. at 125. The regulatory implementation of the statute here instructs time limits are mandatory and may neither be waived nor tolled absent extraordinary circumstances. 20 C.F.R. § 718.308(c).

Statutes of limitations are not constructed to protect applicants for benefits, but are enacted to require individuals who have colorably valid claims to pursue those claims expeditiously to ensure that there is not loss of facts or fading of memory over time. *Kubrick*, 444 U.S. at 117. This is easy to understand, as speed in bringing claims works to the advantage of claimants, who will receive benefits quicker, as well as to benefit employers and their insurers, as both will be able to determine the potential liability for former employees and when potential liability lapses. The 2010 claim is time barred as Mr. Varner was told he was disabled by COPD caused by coal dust more than 3 years before he filed the subsequent claim for benefits.

22

**2.    Substantial evidence fails to support the ALJ's resolution of the medical evidence.**

**a.    The ALJ erred in not considering if pneumoconiosis was mild and not a substantial contributor to disability.**

Given his years of coal mine employment and his disabling pulmonary disease, Mr. Varner may be eligible for the presumption of total disability due to pneumoconiosis provided at 30 U.S.C. § 921(c)(4); *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550 (4th Cir. 2013).

The ALJ holds that the presumption of 30 U.S.C. § 921(c)(4) may be rebutted in only two fashions: (1) the miner does not have pneumoconiosis; or (2) the respiratory or pulmonary impairment did not arise out of coal mine employment. An employer may rebut by showing mild pneumoconiosis has not caused the disabling pulmonary disease. *See Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 559 (Neimeyer, concerning). The Board disagreed. *See* JA 81-82.

This matter should be remanded to ALJ Morgan for consideration of this additional rebuttal method which is entirely consistent with the Supreme Court's decision in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976). In *Usery*, the Court explained operator is not limited to rebuttal methods provided to the Secretary. *Id.* at 35. As rebuttal can be established by proving some other

23

diseases responsible for the disability not withstanding mild legal pneumoconiosis, the ALJ must be asked to reevaluate the evidence under the correct standard.

### b. Substantial evidence does not support the ALJ's resolution of the conflicting evidence.

Mr. Varner does not have clinical pneumoconiosis. JA 69. As Mr. Varner has not challenged this finding, the only way this subsequent claim can be considered is if there has been a material change in condition now suggesting the presence of legal pneumoconiosis which was not found in the prior claim. *See* 20 C.F.R. § 725.309(d); *Lisa Lee Mines v. Director, OWCP*, 86 F.3d 1358 (4th Cir. 1996) (*en banc*).

ALJ Morgan discusses the physician opinions as to the presence or absence of legal pneumoconiosis. JA 68. Dr. Gaziano could not distinguish between the cause of COPD, but does not believe a minimal smoking history could have caused such a severe impairment. JA 68. Dr. Jaworski noted a modest smoking history and that there was no way to differentiate between COPD caused by cigarette smoking and coal dust. JA 69. Relying on the relative exposures and the miner's coal dust exposure, Dr. Jaworski believed coal dust was more significant even though bronchial asthma could have been caused by either smoking or coal dust. *Id.* Dr. Jaworski opined some combination of coal dust, cigarette smoking, and asthmatic diathesis caused the COPD. *Id.* Dr. Basheda

24

determined while there were several possible etiologies to Mr. Varner's obstructive

lung disease, the obstruction was consistent with that seen in tobacco induced

COPD with an asthmatic or bronchial asthmatic component. *Id.* From this, he

concluded asthma was the primary cause of the respiratory impairment. *Id.*

Dr. Bellotte also found emphysema caused by tobacco abuse and asthma, but not a

coal mine dust induced condition. *Id.*

ALJ Morgan finds that the opinions of Drs. Bellotte, Basheda, and

Jaworski are entitled to less weight because they did not consider coal mine dust as

a cause or aggravating factor of asthma. JA 70. Substantial evidence does not

support such a determination. Each physician was well aware of the miner's

history to coal dust exposure, and each physician did consider the possibility of

coal dust being an aggravating factor or causal factor of asthma. JA 127, 231-32,

265. ALJ Morgan errs in concluding that Dr. Basheda and Jaworski have offered

an opinion contrary to the regulations, finding that coal dust could cause an acute

exacerbation of asthma but not a chronic exacerbation of asthma. The BLBA

compensates for chronic dust disease of the lung. 20 C.F.R. § 718.201(a).

As a lay fact-finder, ALJ Morgan is not in a position to quibble over

medical diagnoses with physicians. The interpretation of medical data is restricted

to medical experts. *Marcum v. Director, OWCP*, 22 BLR 1-23 (1987); *Bogan v.*

*Consolidation Coal Co.*, 6 BLR 1-1000 (1984). Physicians explain that an acute

exacerbation is not the same thing as a chronic exacerbation. Dr. Basheda explains

while coal dust does not cause asthma, it can exacerbate asthma. JA 204-206.

Dr. Jaworski, the treating physician, assumes asthma is not considered to be a

disease caused by coal dust exposure. JA 229. The BLBA defines

pneumoconiosis, both clinical and legal pneumoconiosis, to be a chronic dust

disease of the lungs. 30 U.S.C. § 902(b); 20 C.F.R. § 718.201. Thus, any

contribution to an acute exacerbation or acute aggravation is not a chronic dust

disease or chronic aggravation. ALJ Morgan errs to construe the definition of

pneumoconiosis to require or suggest acute exacerbations must be

"pneumoconiosis." The ALJ compounds this error by overruling a physician's

interpretation of the significance of chronic or acute changes due to an exposure.

This flaw requires the decision to be vacated as substantial evidence cannot

support the determinations.

        Inconsistently, ALJ Morgan affords Dr. Gaziano's opinion less weight

as he is the only physician to fail to diagnose asthma. JA 70. Such a finding is

inconsistent with his conclusion that Drs. Bellotte, Basheda, and Jaworski have

offered opinions worthy of less weight because they each did diagnose asthma.

JA 70. The inconsistency in the ALJ's decision makes the determination harder to

understand. Here, the decision fails to meet the required standard as a reviewer

can not understand what the ALJ did and why he did it. *See Lane Hollow Coal Co.*

26

*v. Director, OWCP*, 137 F.3d 799, 803 (4th Cir. 1998). Further, there is no rule of law, statutory provision, or regulatory definition that asthma in a retired coal miner always constitutes legal pneumoconiosis. The matter must be returned for the ALJ to consider the evidence concerning asthma. The Board failed to address this error.

ALJ Morgan errs in giving Dr. Basheda's opinion less weight for two invalid reasons. First, although Dr. Basheda does note medical studies that show pneumoconiosis is typically progressive and irreversible in young miners, Dr. Basheda does not state that disabling COPD only occurs in young coal miners. JA 213. The ALJ fails to provide a reference to the record where Dr. Basheda states disabling COPD only arises in young coal miners, and indeed there is no such basis to find that Dr. Basheda has excluded older coal miners as developing COPD from coal dust exposure. He merely explained disabling obstruction "often" occurs very early in someone's mining career. JA 213. Dr. Basheda also explained coal dust exposure is a fixed airway obstruction, without bronchodilation and inflammatory properties associated with asthma or tobacco-induced COPD (JA 198), ███████████████████████████████████████████ ████████████████████████ (JA 201), ████████████████████████████ ████████████ (JA 202). None of these were features of the permanent airway diseases of legal pneumoconiosis.

Dr. Basheda's opinion was deemed deficient as he relied on expected loss of $FEV_1$ due to coal dust and smoking. JA 70. In his report, Dr. Basheda referred to a medical article from 2002 suggesting the size of loss of $FEV_1$ from coal dust. JA 128. He also noted the loss of $FEV_1$ from tobacco was greater than for coal dust exposure. JA 129. He did not "calculate" the loss of $FEV_1$ due to smoking or coal dust to contravene the precepts of the preamble as the ALJ suggests. JA 70. Substantial evidence fails to support the reasoning the ALJ used to discredit Dr. Basheda's analysis.

Without any basis in this record, the ALJ leaps to the conclusion that the preamble provides such a calculation as inconsistent as the Department of Labor has concluded that coal dust exposure is clearly associated with clinically significant airways obstruction in chronic bronchitis. The fact that COPD may be caused by coal dust exposure does not mean the type of COPD seen in this miner was caused by coal dust exposure. Further, the ALJ is in no position to match his medical evaluation of disease causation against that of Dr. Basheda, a trained physician. This in an invalid basis to invalidate Dr. Basheda's opinion, requiring the claim be returned to the administrative law judge for further consideration.

Dr. Bellotte's opinion is given less weight as he relied on a "grossly inaccurate smoking history." JA 70. Substantial evidence fails to support this

28

assertion.  Left unresolved by the ALJ making this finding is substantial contradictory evidence contained in the medical records.

In a treatment note from December 27, 1989, his physician at Wedgewood Family Practice noted the patient had "been a 40 pack a year smoker and quit 1½ years ago."  EE 2.  Dr. Bellotte also noted this history of significant smoking in his report.  JA 243.  Contrary to the ALJ's finding, there is evidence to support Dr. Bellotte's conclusion that Mr. Varner was a significant smoker.  Of more consequence is that the ALJ has failed to resolve the substantial conflict as to whether Mr. Varner continued to smoke or whether he smoked 30 or 6 cigarettes a day.  Although several histories show he stopped smoking in 1988, notes from Wedgewood Family Practice reveal continued counseling on smoking cessation and options for avoidance on August 13, 2009, September 14, 2009, April 20, 2010, January 4, 2011, July 20, 2010, and January 11, 2011.  EE 2.  These sessions on smoking cessation call into question the claim Mr. Varner is a non-smoker since 1988.  The ALJ must resolve all of the material conflicting evidence to comport with the APA and then analyze whether Dr. Bellotte's opinion can be given less weight as he relied on a "grossly inaccurate" smoking history.  *See generally Gunderson v. Director, OWCP*, 601 F.3d 1013 (10th Cir. 2010).

The ALJ's analysis as to the existence of legal pneumoconiosis also influences and causes the finding of disability due to pneumoconiosis to be flawed.

29

As explained, the ALJ must analyze whether legal pneumoconiosis, if found established, was causing a material part of the disability or if it was only mild and not responsible for the disabling impairment. 20 C.F.R. § 718.305. A claimant must establish pneumoconiosis as either a material contributing cause or substantially aggravating part of a disabling pulmonary impairment to establish disability causation under § 718.204(c). An operator can be required to establish no more than the converse under the same permanent regulations to defeat a claim of total disability due to pneumoconiosis. Such a standard is consistent with the rule of law established by the Supreme Court in *Usery*, and invalidates any suggestion that an employer must "rule out" pneumoconiosis as causing any part of the disabling impairment to rebut the presumption of total disability due to pneumoconiosis afforded by the 15-year presumption of 30 U.S.C. § 921(c)(4).

The decision and order cannot be found to be based on substantial evidence and must be vacated and remanded.

## VII.   CONCLUSION

This claim should be denied as a matter of law as time barred as Mr. Varner has conceded his treating physician told him he could no longer work in the coal mines because of his disabling COPD.  In the event the claim is not found to be time barred, the ALJ's determination that the evidence is presented establishes disability due to pneumoconiosis is not based on substantial evidence and a reasonable evaluation of all the evidence of record.  As a result, the award must be vacated and either reversed, or remanded, for further consideration.

Respectfully submitted,

CONSOLIDATION COAL COMPANY,

By Counsel.


/s/ William S. Mattingly
William S. Mattingly
WV State Bar No. 4699
Jackson Kelly PLLC
150 Clay Street, Suite 500
P. O. Box 619
Morgantown, WV  26507
(304) 284-4110

## VIII.  REQUEST FOR ORAL ARGUMENT

CONSOL respectfully requests this matter be set for oral argument to allow further explanation of the issues and contentions of the parties.  This matter equally presents whether the agency has followed this Court's precedent in evaluating whether a black lung benefits claim is timely filed and the parties should be able to explain its argument their positions in support of opposition to the agency action. As this claim also involves detailed consideration of the legal standards to apply and consideration of medical evidence, oral argument will also help facilitate an understanding of why the ALJ's decision is irrational and unsupported by substantial evidence.

## IX.     CERTIFICATE OF COMPLIANCE

### UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

No. <u>13-2415</u>          Caption:     <u>Consolidation Coal Company v. Fuller W.</u>
                                         <u>Varner</u>

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

I.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.
l(e)(2) or 32(a)(7)(B) because:

Appellant's Opening Brief; Appellee's Response Brief and Appellant's
Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's
Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply
or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used
only with monospaced type]

  <u>  X  </u>   this brief contains **6,048** *[state the number of]* words, excluding the
parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

<u>    </u>   this brief uses a monospaced typeface and contains <u>            </u>
*[state the number of]* lines of text, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman*
*or CU Times; 12-point font must be used with monospaced typeface, such as*
*Courier or Courier New]*

<u>    </u>   this brief has been prepared in a proportionally spaced typeface using
<u>          </u> *[state name and version of word processing program]* in
<u>          </u>
<u>          </u> *[state font size and name of the type style]; or*

_____ this brief has been prepared in a monospaced typeface using _____ *[state name and version of word processing program]* with _____ _____ *[state number of characters per inch and name of type style].*

/s/ William S. Mattingly                    Dated:        June 16, 2014
*Counsel for Consolidation Coal Company*

34

## X.    CERTIFICATE OF SERVICE

I, William S. Mattingly, do hereby certify that I served the foregoing

**Consolidation Coal Company's Brief in Support of Petition for Review** by

Electronic service via CPS and by mailing a copy thereof to each by United States

Postal Service, postage prepaid, this 16th day of June, 2014.

**ELECTRONIC/**          Patricia S. Connor
**REGULAR MAIL:**     U. S. Court of Appeals for the Fourth Circuit
                                   Lewis F. Powell, Jr. United States Courthouse Annex
                                   1100 East Main Street, Suite 501
                                   Richmond, VA  23219-3517


**ELECTRONIC:**          Heath M. Long
                                   Pawlowski, Bilonick & Long
                                   P. O. Box 658
                                   Ebensburg, PA  15931-0658
                                   pbllaw@yahoo.com

                                   Richard A. Seid
                                   Counsel for Benefits Program
                                   Division of Employee Benefits
                                   Office of the Solicitor
                                   2620 Frances Perkins Building, Suite N-2605
                                   200 Constitution Avenue, N.W.
                                   Washington, DC  20210
                                   seid-richard@dol.gov




/s/ William S. Mattingly